*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re MURK, Minors.

UNPUBLISHED
March 17, 2022

No. 358311
Van Buren Circuit Court
Family Division
LC No. 19-019138-NA

Before: RIORDAN, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

Respondent-appellant ("respondent"), the mother of CCM and EAM, appeals as of right the order terminating her parental rights under MCL 712A.19b(3)(c)(*i*) (conditions which led to adjudication continue to exist and are unlikely to be rectified within reasonable time) and MCL 712A.19b(3)(j) (based on parent's conduct or capacity, child is reasonably likely to be harmed if returned to parent). We affirm.

## I. FACTS

When petitioner became involved with respondent's family, respondent was caring for CCM, EAM, and their half siblings, MG and JG. Petitioner became involved after S. Murk ("Murk"), the father of CCM and EAM, choked respondent in the presence of her children. Despite a safety plan to the contrary, Murk continued to spend time or live in the home with respondent and the children. Petitioner petitioned the trial court to take jurisdiction of all four children after Murk threw a dry-erase board at MG, bruising his ear. Additionally, MG was found to have multiple bruises on his body, and MG stated it was respondent who slapped him.

Respondent's participation in services and parenting time largely was successful for some time, and CCM and EAM were returned to her care after about a year of being placed with their half-siblings MG and JG, and with Murk, the father of their siblings.[1] However, respondent absconded after being jailed and sentenced to complete a probation substance abuse treatment program, was arrested and placed back in the treatment program, and absconded again.

---

[1] This household was considered a relative placement.

Respondent subsequently spent months absconding rather than resolving her active warrants, although she was instructed that she needed to resolve her warrants to spend time with, and work toward reunification with, her children. Eventually, the trial court terminated respondent's parental rights to CCM and EAM.

On appeal, respondent disputes the existence of statutory grounds to terminate her rights. In addition, respondent challenges the trial court's assumption of jurisdiction over CCM and EAM, and the second removal of the children from her care, which took place on September 2, 2020.

## II. ADJUDICATION

Respondent argues that the trial court erred by accepting her plea at the adjudication phase because the few allegations she admitted were not sufficient to support grounds for asserting jurisdiction over CCM and EAM.

Because respondent did not raise this issue in the trial court, our review is for plain error. *In re Baham*, 331 Mich App 737, 745; 954 NW2d 529 (2020). On plain-error review, a respondent "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected . . . substantial rights." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). In addition, the error must have "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *In re Ferranti*, 504 Mich at 29 (quotation marks and citation omitted).

"While the adjudicative phase is only the first step in child protective proceedings, it is of critical importance because '[t]he procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation' of their parental rights." *In re Sanders*, 495 Mich 394, 405-406; 852 NW2d 524 (2014) (citation omitted). As relevant here,[2] Michigan courts have:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary

---

[2] MCL 712A.2(b)(1) provides "a number of alternative grounds for taking jurisdiction." *In re Baham*, 331 Mich App at 746. The trial court here assumed jurisdiction because of (1) a "failure to provide, when able to do so, support, education, medical, surgical, or other necessary care for health or morals," MCL 712A.2(b)(1); (2) a "substantial risk of harm to mental well-being," MCL 712A.2(b)(1); and (3) "an unfit home environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian," MCL 712A.2(b)(2). The trial court did not specify which of the grounds applied to respondent and which applied to Murk.

for his or her health or morals, [or] who is subject to a substantial risk of harm to his or her mental well-being . . . . As used in this sub-subdivision:

* * *

(B) "Neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602. [MCL 712A.2(b)(1) and (b)(2).]

MCL 712A.2 "speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). Under the definition of "neglect" referenced in both MCL 712A.2(b)(1) and (b)(2), a showing of harm is required. MCL 722.602(d); *In re Smith*, 507 Mich 905, 905 (2021).

Respondent argues that the facts she admitted were insufficient to support a finding of statutory grounds to take jurisdiction of CCM and EAM. The respondent in *In re Baham*, 331 Mich App at 745, made a similar argument. In that case, we explained, when a respondent makes a plea at the adjudication phase, that the trial court has an obligation to independently determine whether the facts admitted are sufficient to establish grounds for jurisdiction:

After authorizing a petition to take jurisdiction over a minor child, the trial court can exercise jurisdiction over the child if a respondent-parent enters a plea of admission or no contest to the allegations in the petition. However, before it may do so, the court must find that a statutory basis exists for exercising jurisdiction over a minor in a child-protective proceeding. Thus, even if a respondent enters a plea of admission to all or some of the allegations in the petition, the trial court may not accept that plea without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true. If the trial court does not establish support for a finding that one or more of the statutory grounds alleged in the petition is true, then the respondent's plea of admission is invalid because it is not an accurate plea. [*In re Baham*, 331 Mich App at 745-746 (cleaned up).]

In that case, the incarcerated respondent testified that she could not personally care for her child and had no appropriate plan for how to care for her child. *Id*. at 747-748. This Court held that her admission was sufficient to show the child was without "proper custody and guardianship," one of the bases for jurisdiction listed in MCL 712A.2(b)(1). *Id.* at 746-750.

The admissions in this case are less clearly sufficient. Respondent admitted that she was the victim of domestic violence by Murk with "the children" present on one occasion about seven months before the petition was filed, that she slapped MG once two months before the petition

was filed, and that MG had a bruise on his ear when the petition was filed. Respondent did not admit that she continued to reside with Murk or continued to spend time with him with the children, that MG's bruise was the result of any kind of violence, that CCM and EAM were ever victims of violence, or that there was any violence continuing to occur in the home.

However, even assuming without deciding that respondent's admissions were insufficient to support her plea, she has not satisfied the plain-error standard because she has not even attempted to show that any plain error affected her substantial rights. See *In re Utrera*, 281 Mich App at 9. In *In re Baham*, this Court addressed the substantial rights prong of plain-error review in the context of a plea at adjudication:

> Finally, even if respondent could show plain error, she made no attempt to establish that the plain error affected her substantial rights. Respondent made a decision to enter a plea of admission to the allegations in the petition. As a result, the adversarial process was never engaged. . . . Ultimately, because respondent entered a plea of admission, [various relevant] factual matters remain ambiguous, open to speculation either in support of or in opposition to respondent's argument on appeal. Speculation and suspicion that a plain error may have occurred is insufficient to establish a reasonable probability that the outcome of the proceedings would have been different. [*In re Baham*, 331 Mich App at 750.]

In this case, respondent does not argue that the other petition allegations could not have been proved against her, or that they would have been insufficient to support jurisdiction if proved. These allegations included that respondent "admitted to a history of domestic violence with [Murk] with the children present;" that Murk was residing in the home with respondent and the children, in violation of a safety plan to which respondent agreed; that Murk caused the dark bruise to MG's ear by throwing a dry-erase board at him with respondent present; or that MG had many more bruises on his body in various stages of healing, which were indicative of child abuse. There was evidence in the record to support these allegations. Respondent was advised of her rights and represented by counsel. It is at best speculative that facts supporting grounds for jurisdiction would not have been proved against respondent had the trial court rejected her plea and proceeded to a trial. Under *In re Baham*, 331 Mich App at 750, that is not sufficient to show that respondent's substantial rights were affected. Respondent is therefore not entitled to relief.

### III. REMOVAL OF THE CHILDREN ON SEPTEMBER 2, 2020

In February 2020, CCM and EAM were returned to respondent's care, though they were still under the jurisdiction of the trial court. Respondent was jailed in late August 2020 for violating her parole by associating with a felon and having a weapon within her reach. She was sentenced to 14 days in jail and completion of an institutional probation substance abuse treatment program. Before being jailed, respondent dropped CCM and EAM off with MG and JG's father, with petitioner's approval. Petitioner then filed a petition requesting that CCM and EAM be removed from respondent's care. In addition to respondent being temporarily unable to care for the children, the caseworker emphasized concerns about respondent's dishonesty and failure to follow safety plans. The trial court ordered CCM and EAM removed from respondent.

-4-

Respondent argues that, rather than officially "removing" CCM and EAM from respondent, the trial court simply should have recognized and approved respondent's placement of the children with MG's and JG's father as relative care analogous to the type of relative care discussed in *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010). Respondent argues that officially removing CCM and EAM from her was unnecessary, and therefore a violation of MCR 3.963(B)(1)(b)(*ii*), MCR 3.974(C)(3)(b), and MCR 3.965(C)(2)(b), which collectively required a finding that "[n]o provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk" leading to the need for removal. MCR 3.965(C)(2)(b). The trial court did make this finding, but respondent argues that it was erroneous.

Respondent did not raise this issue in the trial court, so our review is for plain error. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). In fact, counsel for respondent expressly indicated respondent agreed with petitioner's recommendation to remove CCM and EAM from respondent's care. "Respondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). Respondent thus waived this issue but, even if she had not, respondent makes no attempt to show that her substantial rights were affected because the children were officially "removed" from her care on September 2, 2020. Given respondent's repeated absconding and minimal engagement with petitioner or her children after this point in the case, and given the fact that the children were later removed from this relative placement when petitioner determined that the placement was inappropriate for the children, we conclude that even if plain error occurred, it did not affect respondent's substantial rights. See *In re Utrera*, 281 Mich App at 9.

## IV. STATUTORY GROUNDS FOR TERMINATION

Finally, respondent argues that the trial court erred by finding statutory grounds for termination of her parental rights were proved by clear and convincing evidence. To terminate a person's parental rights, the trial court must first find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded in part by statute on other grounds as stated in *In re Moss,* 301 Mich App 76, 83; 836 NW2d 182 (2013).

This Court generally reviews the trial court's "factual findings and ultimate determinations on the statutory grounds for termination" for clear error. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). This Court finds clear error when it is "definitely and firmly convinced that [the trial court] made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). In applying the clear error standard, " 'regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *In re Schadler*, 315 Mich App 406, 408-409; 890 NW2d 676 (2016) (citation omitted). "We review de novo the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich at 152.

The trial court found that there was clear and convincing evidence to establish statutory grounds for termination under MCL 712A.19b(3)(c)(*i*) and (j). MCL 712A.19b(3)(j) authorizes termination of "a parent's parental rights to a child if the court finds, by clear and convincing

evidence," that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). "[T]he harm in question need not be physical; a risk of *emotional* harm can suffice." *In re Pederson*, 331 Mich App 445, 473; 951 NW2d 704 (2020) (quotation marks and citation omitted).

Respondent's main argument is that the trial court improperly focused on her incarceration, see *In re Mason*, 486 Mich at 146 ("Incarceration alone is not a sufficient reason for termination of parental rights."), and unknowns about her ability to provide safe housing for the children, while ignoring a possible placement option with her mother.

As noted, incarceration alone is not sufficient reason to terminate someone's parental rights under MCL 712A.19b(3)(j). See *In re Baham*, 331 Mich App at 754, 758-759 (holding that trial court clearly erred by finding MCL 712A.19b(3)(h) and (j) were satisfied when the incarcerated parent was making "undisputed progress toward reunification," and her child had been placed with relatives with the parent's assistance). Under MCL 712A.19b(3)(j), "it is proper to scrutinize the likelihood of harm if the child were returned to the parent's home *after* the parent's release from prison." *In re Pops*, 315 Mich App 590, 600; 890 NW2d 902 (2016). The trial court, in this case, explicitly acknowledged that incarceration alone was not cause for terminating parental rights. The trial court noted that it was unclear what respondent's living situation would be when she was released because respondent had not been communicating with petitioner.

In this case, CCM and EAM had been placed with nonrelative foster parents for several months by the time of the termination hearing, and there is no evidence that respondent suggested or requested the children should be placed with respondent's mother. Moreover, there was minimal evidence that the home of respondent's mother was an option, let alone an appropriate option, to house the children, either while or after respondent was incarcerated. As of May 7, 2021, there was evidence that the boyfriend or husband of respondent's mother was on the central registry, and respondent's mother had allowed him to be alone with respondent's children despite being told not to do so. Murk, not respondent, gave respondent's mother's address as an address for respondent. There was testimony that respondent continued to indicate she lived with Murk, despite the fact she had identified him as a "trigger" for her drug use. There was thus certainly support for the trial court's concern about respondent's ability to provide a safe home.

In addition to considerations about whether respondent could provide a safe home location, there was other evidence supporting a finding of a reasonable likelihood that the children would be harmed if returned to respondent's home and respondent's care. As stated, when placed in a probation treatment program, respondent absconded on two separate occasions, and spent many months avoiding resolving her active warrants rather than working to reunite with her children. "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711. A caseworker repeatedly expressed concerns that respondent was dishonest with workers. There was evidence that she was arrested for assaulting a man by stabbing him in the neck in July 2021, in an alcohol-related incident. Respondent's decision to repeatedly abscond over reuniting with her children separates this case from *Mason* and *Baham*, and here incarceration alone clearly was not the basis for terminating respondent's rights.

Respondent next argues that the trial court improperly compared the foster parents and respondent at the statutory-ground phase, and determined that the children would be "harmed" by being removed from the foster parents. However, the trial court explicitly made a comparison between caregivers during its best-interest analysis, only *after* finding MCL 712A.19b(3)(j) had been satisfied, and respondent offers no support for her theory that the trial court improperly extended this comparison to its statutory-ground analysis. As such, this argument is abandoned. See *Matter of Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992) ("A party may not merely announce his position and leave it to us to discover and rationalize the basis for his claim."). Moreover, as discussed above, there was sufficient evidence supporting the trial court's finding that MCL 712A.19b(3)(j) was satisfied.[3]

Finally, respondent very briefly argues that the trial court should have sought to foster sibling bonds by waiting for a determination whether respondent's newborn baby would be returned to her care before terminating respondent's rights to CCM and EAM. This argument is unsupported by any caselaw and thus also abandoned. See *Matter of Toler*, 193 Mich App at 477. In any case, at the May 19, 2021 permanency planning hearing, CCM and EAM had been in foster care for 15 of the preceding 22 months. As such, the trial court was required to order petitioner to initiate termination proceedings, unless there was a compelling reason this would not be in the children's best interests, or certain other conditions not relevant here[4] applied. MCL 712A.19a(8). Respondent makes no attempt to show that a "compelling reason"[5] existed for not initiating termination proceedings, or that any other basis for not proceeding to termination existed. The speculative possibility that the newborn might eventually be permanently returned to respondent does not represent such a "compelling reason," given how long CCM and EAM had already been under the trial court's jurisdiction, and respondent's continuing lack of engagement with petitioner.

---

[3] To the extent respondent's argument could be taken as a challenge to the *best-interest* analysis, "the advantages of a foster home over the parent's home" are among the many factors the trial court "should consider" in evaluating the children's best interests. *In re White*, 303 Mich App at 713 (quotation marks and citation omitted). There was therefore no error in considering such advantages during the best-interest phase, as the trial court did.

[4] "The court is not required to order the agency to initiate proceedings to terminate parental rights if" "[t]he child is being cared for by relatives," MCL 712A.19a(8)(a), but this was no longer the case at the time of the permanency planning hearing.

[5] MCL 712A.19a(8)(b) states:

. . . Compelling reasons for not filing a petition to terminate parental rights include, but are not limited to, all of the following:

(*i*) Adoption is not the appropriate permanency goal for the child.

(*ii*) No grounds to file a petition to terminate parental rights exist.

(*iii*) The child is an unaccompanied refugee minor as defined in 45 CFR 400.111.

(*iv*) There are international legal obligations or compelling foreign policy reasons that preclude terminating parental rights.

As such, there was no plain error in continuing with the termination process despite the chance the newborn might be reunited with respondent.

Overall, we are not "definitely and firmly convinced that [the trial court] made a mistake," in finding clear and convincing evidence that that there was a reasonable likelihood CCM and EAM would be harmed if returned to respondent's care. See *In re White*, 303 Mich App at 709-710. As such, there was no clear error in finding that clear and convincing evidence supported termination of respondent's parental rights to the children under MCL 712A.19b(3)(j). Having found the trial court did not clearly err regarding this statutory ground, we need not consider respondent's claim of error regarding MCL 712A.19b(3)(c)(*i*). See *In re Pederson*, 331 Mich App at 475.

## V. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle